STATE EX REL. BOARD OF CHRISTIAN SERVICE OF
LUTHERAN MINNESOTA CONFERENCE v.
SCHOOL BOARD OF CONSOLIDATED
SCHOOL DISTRICT NO. 3.[1]

No. 32,135.

September 29, 1939.

[1]Reported in 287 N. W. 625.

64

*Albert Mohn,* for appellant (respondent below).
*Bentley & Christianson,* for respondent (relator below).

LORING, JUSTICE.

This is an appeal from the judgment and decree of the lower court granting relator a peremptory writ of *mandamus* against the school board of consolidated school district No. 3 in Goodhue county.

Relator is a charitable corporation organized under the laws of this state "to establish, maintain, manage, and conduct * * * orphans' homes, children's homes, * * * and such other institutions for religious, moral, educational or benevolent purposes as it may in the future establish, * * *." Relator has its office in St. Paul. Pursuant to its authorization, it maintains various charities in the state, including the Vasa Children's Home in Consolidated School District No. 3, in Goodhue county, wherein a public school is maintained. All of the home's property, valued at about $172,000, is withdrawn from the tax rolls as exempt.

At the home are a number of children of school age. Most of them have been awarded to relator for care by various juvenile courts as being dependent and neglected minors. A few children appear to be in the home because of custody assumed by relator without any legal proceedings. The children come chiefly from Minnesota, but, since the Lutheran Minnesota Conference of the Augustana Synod covers other states than Minnesota, it is possible

for children to be brought to the home from other states. The children remain at the home until a permanent place can be found for them or they can be returned to their parents or relatives. Many children have been at the home for a year or longer.

Relator maintained a school at the home for the children because they were excluded from the district public school. However, on September 14, 1936, the children of school age, some 22 in number, were presented at the consolidated school for admission. Entrance was denied. To compel admittance, this action for *mandamus* was instituted against the school board of the district. The board admitted the foregoing facts.

The lower court held that the children at the home had a school residence within the school district and were entitled to be admitted. Also, there were findings that the children could be reasonably accommodated by the school's facilities.

■ The pivotal question upon which the decision hinges is whether or not children living at the home have a residence within the boundaries of the school district sufficient to justify imposing the duty to educate them upon the district.

By 1 Mason Minn. St. 1927, § 2741, the policy and mandate of the legislature is expressed as follows:

"All schools supported in whole or in part by state school funds shall be styled public schools and admission to and tuition therein shall be free to all persons between the ages of five and twenty-one years, in the district in which such pupil resides."

The school district herein involved receives state school funds and is therefore within the category of public schools. By virtue of § 2741, if the home's children are residents of the school district, they must be admitted to the school without charge. The school board has no discretion in the matter.

We think the decision of the questions involved can be determined by an analysis of the difference between "domicile" and "residence." This is true because of the different legal incidents which the law attaches to each. "Residence" is a term used with many shades of meaning. Beale, "Residence and Domicil," 4 Iowa L. B. 3, 4.

It differs from "domicile" in that "residence simply requires bodily presence as an inhabitant in a given place, while domicile requires bodily presence in that place and also an intention to make it one's domicile." Matter of Newcomb's Estate, 192 N. Y. 238, 250, 84 N. E. 950, 954. See also for a discussion of the difference between "residence" and "domicile," In re Application of Seidel, 204 Minn. 357, 283 N. W. 742.

Ordinarily, the domicile of an infant is, by law, the same as the father's, if living. State ex rel. Carlson v. Hedberg, 192 Minn. 193, 256 N. W. 91; Goodrich, Conflict of Laws (2 ed.) § 34, p. 60; 2 Dunnell, Minn. Dig. (2 ed. & Supps.) § 2813; 19 Minn. L. Rev. 337. And if a guardian is appointed, the domicile remains within the state of appointment. 1 Beale, Conflict of Laws, § 37.1, p. 219. Generally, the infant has no choice as to his domicile and has no legal power to change it. With respect to residence, the law is more liberal. Where that alone is involved, an infant can acquire one different from that of his domicile or the domicile of his father or guardian. See 1 Beale, Conflict of Laws, § 30.2, p. 212; Beale, "Domicil of an Infant," 8 Cornell L. Q. 103, 108.

"To establish the rule that a minor cannot have a residence for school purposes other than that of his parents would in many cases deprive such minor of all benefit of such schools." State ex rel. School Dist. v. Thayer, 74 Wis. 48, 58, 41 N. W. 1014, 1017.

And in I. O. O. F. v. Board of Education, 90 W. Va. 8, 15, 110 S. E. 440, 443, 48 A. L. R. 1092, and note, a case not greatly unlike the one at bar, it was stated:

"Every child of school age in this state is entitled to attend the public schools in the district in which it actually resides for the time being, whether that be the place of its legal domicile, or the legal domicile of its parents or guardian, or not."

We think this to be an apt and correct statement of the law generally on this question.

While many opinions and statutes use the terms "domicile" and "residence" interchangeably and thus create confusion, we think

it is clear that § 2741 uses the word "resides" in the sense of residence merely and not in the sense of domicile.

Minn. Const. art. 8, § 1, provides:

"The stability of a republican form of government depending mainly upon the intelligence of the people, it shall be the duty of the legislature to establish a general and uniform system of public schools."

And § 3 of the same article provides in part:

"The legislature shall make such provisions, by taxation or otherwise, as, with the income arising from the school fund, will secure a thorough and efficient system of public schools in each township in the state."

The legislature must be deemed to have intended to carry out the beneficent purpose of the constitutional mandate and therefore to have used the word "resides" in its broadest sense and with a view to providing a free education for every child in the state. If the word were used in the strict sense of legal domicile the benefits of free education would, as a practical matter, be denied to children who could not reside at the place of their legal domicile. No such purpose should be imputed to the legislature.

Since domicile is not determinative, we can disregard the domicile of the home's children. The remaining question is whether or not the children have become residents of the school district. Residence for school purposes must be decided upon the facts presented by each case. State ex rel. Crosland v. Board of Education, 91 Minn. 268, 97 N. W. 885. That the home is the place of their dwelling indefinitely is self-evident. They have no other place, at least for the present, where the care and support demanded by the law can be bestowed. The fact that someone may adopt a child or that his parents may be able again to undertake their duties does not render the children merely sojourners. It is at the home where they in fact live and receive what more fortunate minors are given at their parents' homes. A residence within the district is sufficiently established, and the home's children must be admitted to the district

school on the same basis as other children in the district. If the district feels that a hardship is imposed upon it, application for relief should be addressed to the legislature. This court has no power to adjust such matters.

■ Defendant argues that the action should have been instituted against the school district and not against the school board. The basis of this is the fact that at one time the voters of the district voted to exclude the home's children from the district public school. Defendant board claims it was merely carrying out that mandate. The board is properly a defendant in an action of this nature. Extensive powers to conduct and manage the schools of the district are vested in the board. 1 Mason Minn. St. 1927, § 2998, provides for a penalty against any member of a public school board who, without sufficient cause, shall vote to exclude from school privileges any person entitled to admission. This indicates the power to admit or exclude is in the board. The board under § 2741 has the duty to admit all who come within the provisions of that statute, except as that statute is qualified by § 2998, discussed in Bright v. Beard, 132 Minn. 375, 157 N. W. 501, Ann. Cas. 1918A, 399. Consequently, the mere fact that the voters assumed to decree otherwise is not ground to exclude the home's children. In the answer defendant alleged that for reasons there stated it had excluded the children. This is sufficient to establish that the board acted in the exclusion. There was no error.

■ We must concur in the defendant's contention that costs and disbursements cannot be taxed against it. The members of the board are public agents, Sanborn v. Neal, 4 Minn. 83 (126), 77 Am. D. 502, and as such are performing governmental functions. Education and the administration of it are both governmental operations, made so by our constitution. Those engaged in performing this undertaking are acting for and in behalf of the state in its sovereign capacity.

"When the state acts in its sovereign capacity, costs and disbursements cannot be taxed against it. * * * His [the state officer's] error in judgment does not change the situation." State ex rel.

Smiley v. Holm, 186 Minn. 331, 332, 243 N. W. 133; Schweigert v. Abbott, 122 Minn. 383, 392, 142 N. W. 723 (a school officer case).

On the authority of these decisions, this must be taken to be the rule in Minnesota. There was error in allowing costs and disbursements to be taxed, and therefore the judgment will be modified to that extent.

Other assignments of error have been considered and do not merit discussion. The judgment is modified in accordance with the view herein expressed and as modified is affirmed.

ON APPEAL FROM TAXATION OF COSTS.

On November 17, 1939, the following opinion was filed:

PER CURIAM.

On appeal from taxation of costs. The appellant was defeated below, and the trial court after objection taxed costs and disbursements against it. Had the appellant elected to come here on the single point that costs and disbursements were improperly taxed against it, clearly, as the prevailing party, it would have been entitled to costs and disbursements here because it succeeded in modifying the judgment below. That it raised other questions upon which it did not prevail does not preclude it from taxing costs and disbursements.

The clerk's taxation is affirmed.

