[1] Reported in 7 N.W.2d 153.
This is an appeal by the County Welfare Board of Hennepin County from an order of the district court of Hubbard county affirming a decision of the Division of Social Welfare, Department of Social Security, State of Minnesota, hereinafter referred to as the State Agency, finding Clara A. Quale to be a resident of Hennepin county and directing that county to make a grant of old age assistance to her if otherwise eligible.
The undisputed facts are these: For a number of years prior to 1935 applicant resided with her husband on a farm in Hubbard county. In the spring of 1935 her husband died. She remained in Hubbard county until that fall, when she sold her personal property and went to Minneapolis, where she stayed with her daughter, Mrs. Evelyn Smith, until May 1936. She then went to Chickasha, Oklahoma, and stayed with her son, Raymond, until May 1937, when she returned to Minnesota. She went to Hubbard county the latter part of May 1937 and visited with friends there until the first part of July 1937, when she returned to Minneapolis. She stayed there until the latter part of May 1938, when she again went to Hubbard county and spent the summer with friends at Lake Belletaine. The forepart of October 1938 applicant returned *Page 423 
to Minneapolis, remaining there until about Memorial Day, 1939, when she again went to Hubbard county, where she spent June, July, August, and September as an employe in the summer home of a Mrs. Baxter. She returned to Minneapolis in October 1939, where she has since remained, with the exception of two trips to Hubbard county in the summer of 1940. When applicant left Hubbard county in the fall of 1935 she did not intend to return there to live; she has ever since considered her home to be in Minneapolis, where her daughters reside.
Mrs. Quale filed her application for old age assistance with the Hubbard county agency on July 10, 1940. That agency denied her application on the ground that she was not a resident of Hubbard county and was therefore not eligible for old age assistance there. On appeal, the State Agency found her to be a resident of Hennepin county, and the district court affirmed the State Agency's order, holding that its decision was not fraudulent, arbitrary, or unreasonable. The only question before us is whether the trial court erred in determining that the State Agency's decision was not arbitrary or unreasonable. There is no claim that it was fraudulent. In reviewing an order of the State Agency, the district court, while permitted to hear new or additional evidence if in its opinion such is necessary to a more equitable disposition of the appeal, may go no further than to find whether the State Agency's decision is fraudulent, arbitrary, or unreasonable. Minn. St. 1941, § 256.21 (Mason St. 1940 Supp. § 3199-21); In re Application of Rasmussen, 207 Minn. 28, 289 N.W. 773.
The provision of the old age assistance act here involved is Minn. St. 1941, § 256.19, subd. 1 (Mason St. 1940 Supp. § 3199-19[a]), which reads:
"For the purposes of §§ 256.11 to 256.43 every person who has resided one year continuously in any county shall have a legal settlement therein, and such legal settlement shall not be deemed lost or terminated until a new settlement shall have been acquired in another county * * *." *Page 424 
Appellant contends that the words "resided one year continuously in any county shall have a legal settlement therein" as used in the foregoing section of the statute should be construed to mean "actual uninterrupted physical presence" in the county "for one continuous year, coupled with an intent to make a home there." In support of that contention it relies upon In re Application of Seidel, 204 Minn. 357, 283 N.W. 742,744. In that case we held that the term "resided" as used in the old age assistance act was intended by the legislature to mean "physical presence in a county coupled with an intent to make a home there." We concluded that the term "resided" as used in the act was intended to include "the element of intent and the status of domicile." But we do not believe that the legislature intended the provision of the act here involved to be given the narrow meaning here contended for by appellant. That the language used in the Seidel case does not require or even bear of such a construction seems apparent from a reading of the whole opinion. "Residence" and "domicile" are not always identical terms. "Residence" may simply require bodily presence in a place, while "domicile" requires bodily presence in the place coupled with an intention to make it one's home. State ex rel. Board of Christian Service v. School Board, 206 Minn. 63,287 N.W. 625; In re Estate of Meyers, 137 Neb. 60,288 N.W. 35; Texas v. Florida, 306 U.S. 398, 59 S.Ct. 563,83 L. ed. 817, 121 A. L R. 1179.
"In order to acquire a new domicile there must be a union of residence and intention. Residence without intention, or intention without residence, is of no avail. Mere change of residence although continued for a long time does not effect a change of domicile, while a change of residence even for a short time with the intention in good faith to change the domicile, has that effect." Matter of Newcomb, 192 N.Y. 238,250, 84 N.E. 950, 954.
To acquire a settlement for old age assistance purposes, there must be both residence and domicile continued for one year. Whether absence from a county for a period during the year effects *Page 425 
a change of domicile depends largely on intention. In re Estate of Meyers, 137 Neb. 60, 288 N.W. 35; Seibold v. Wahl,164 Wis. 82, 159 N.W. 546, Ann. Cas. 1917C, 400; 17 Am. Jur., Domicil, p. 607, § 28. The purpose of the absence, its duration, and its frequency are elements to be considered in determining intention. In re Estate of Meyers, supra.
The State Agency found "that when applicant left Hubbard county in the fall of 1935 she never again intended to return to Hubbard county to live" and "that since leaving Hubbard county applicant has considered her home to be in the city of Minneapolis, where her children reside." These findings are not here challenged. They are equivalent to a finding that when she left Hubbard county she intended to abandon her domicile there and to establish a new one in Hennepin county. On the record before us, we believe the State Agency was justified in finding that Mrs. Quale had established a domicile in Hennepin county more than one year prior to July 10, 1940, when she applied for old age assistance, and in ordering that county to make payments to her if otherwise eligible.
Affirmed.